IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLEN GINN,<br>        Petitioner,<br><br>        v.<br><br>WARDEN HARRY MOORE, Holmesburg<br>Prison and LYNNE ABRAHAM, Esquire,<br>District Attorney,<br>        Respondents. | CIVIL ACTION<br><br>NO. 94-4697 |

## MEMORANDUM OPINION

Petitioner Allen Ginn, pro se, is a prisoner of the Commonwealth of Pennsylvania who was convicted in 1995 of second-degree murder for the killing of a Philadelphia police officer during a robbery and sentenced to life in prison plus a term of ten-to-twenty years. In 1994, before his trial, he filed a petition for a writ of habeas corpus, claiming that his right to a speedy trial under the federal and Pennsylvania state constitutions was violated. That petition was dismissed without prejudice because his claims were not exhausted, as they had not been properly presented to the state courts. Two decades have passed and Ginn has now filed a Motion to Set Aside Judgment for Fraud on the Court, pursuant to Fed. R. Civ. P. 60(d)(3). In the Motion, he claims that his pretrial judge in the Court of Common Pleas "abused discretion [and] disregarded [the] State Supreme Court['s] established rules and procedure . . . by engaging in judicial misconduct." Mot. at 1-2. The Commonwealth, on behalf of Defendants the District Attorney of Philadelphia and the Warden of Holmesburg Prison, has responded arguing that none of Ginn's allegations rise to the level sufficient to permit a finding of fraud on the court. For the reasons that follow, the motion will be denied.

I.   BACKGROUND

Ginn's matter has had a lengthy history of proceedings in both the state and federal courts.

A.   *State Court History*

Ginn and his brother were arrested and charged with murder and robbery in January 1993. Pet'r's Memorandum of Points and Authorities ("Memo.") at 9. On November 1, 1993, while his criminal trial was pending, Ginn filed a pro se motion pursuant to Pennsylvania Rules of Civil Procedure 1100 and 1100(e), which together provided that a defendant held in pretrial incarceration must be brought to trial no later than 180 days from the date that the complaint against him was filed and that such defendant, upon petition, was to be released on nominal bail if held in excess of those 180 days. Pa. R. Civ. P. 1100 & 1100(e). He contended that a period of 180 days had elapsed in his case since his preliminary arraignment and trial had yet to commence.[1] Mot. Ex. 5 at 2. He had also petitioned the court for replacement counsel, contending that there was "an actual conflict created by the continued representation of the defendant by counsel" and "an irreconcilable personality conflict . . . and difference of opinion on the manner in which this case should be litigated." *Id.* at 4-5. The Petitioner's brother filed similar motions on the same day.

Judge Carolyn E. Temin, the assigned pretrial judge, held three hearings—in April, May, and June 1995—on Ginn and his brother's motions. *See* Mot. Exs. 2-4. At those hearings, Judge Temin heard argument from both the Commonwealth and the attorneys appointed to argue the

---

[1] *Pennsylvania v. Abdullah*, 652 A.2d 811 (Pa. 1995), a decision handed down by the Pennsylvania Supreme Court just weeks before Ginn and his brother's Rule 1100 hearings, held that a trial judge has no discretion under Rule 1100(e). Established case law provided, however, that when the defendant or the defense was instrumental in causing a delay—because of, for instance, the unavailability of the defendant or his counsel—the period of that delay was to be excluded from the computation of time. *Pennsylvania v. Brightwell*, 406 A.2d 503 (Pa. 1979) (plurality opinion).

2

motions on behalf of Ginn and his brother, Paul Hetznecker and George Newman. Counsel for the Commonwealth argued that some of the days from the defendants' calculations should be excluded because the breakdown in the attorney/client relationship between the Ginns and their attorneys rendered their cases not ready for trial even though they had been placed in the trial pool. Judge Temin heard testimony from Joel Moldovsky and F. Michael Medway—the attorneys who had previously represented the Petitioner and his brother, respectively. *See generally* Mot. Ex. 3.

At the hearing at which Mr. Medway testified, immediately after Mr. Medway made his presence known in the courtroom, Judge Temin brought Mr. Newman and counsel for the Commonwealth into her anteroom (Mr. Hetznecker was not in court that day), and she explained that she had a rule against allowing Mr. Medway to practice in front of her because she met her husband through Mr. Medway and Mr. Medway her husband's tennis partner. *See id.* at 5-6. She told them she was not aware he was going to be a witness in front of her, and she said she would recuse herself and refer the matter to another judge if counsel wished it. *Id.* at 6.

Mr. Newman stated that he had full faith in Judge Temin's "ability to assess what are essentially factual rulings in this case." *Id.* at 7. Judge Temin asked Mr. Newman, "Can you bind Mr. Hetznecker?", to which Mr. Newman replied, "I'm here on his behalf, and knowing Mr. Hetznecker as well as I do, I think he would take the same position." *Id.* Judge Temin suggested to Mr. Newman that he could take time to consult with Mr. Hetznecker on the phone, but Mr. Newman responded, "I can, but I predict with a great deal of assurance that he would take the same position." *Id.* Mr. Medway then testified before Judge Temin regarding his representation of the Petitioner's brother. *See id.* at 26-30.

3

Judge Temin ultimately denied the motions, finding that the brothers' cases were not ready for trial at the time they were placed in the ready pool—and still were not ready for trial at the time of her ruling—in part due to the breakdown of the relationship between Ginn and his brother, and their previous respective counsel. *See* Mot. Ex. 4. On July 31, 1995, Ginn filed a writ of habeas corpus contesting Judge Temin's ruling on his motion. *See id.* Ex. 7. At the top of the front page of Ginn's pro se petition, he had written "In the Supreme Court of Pennsylvania, Philadelphia District." *See id.* at 2. Nevertheless, it was placed on Judge Temin's docket and she denied it on August 2, 1995. *Id.* at 1.

In October 1995, Ginn was found guilty by a jury of murder in the second degree, aggravated assault, robbery, criminal conspiracy, and possession of an instrument of crime. Memo. at 10. In January 1996, Ginn was sentenced to a total of life imprisonment plus ten-to-twenty years. *Id.* The Superior Court affirmed the conviction and the Pennsylvania Supreme Court denied allocator. *Id.*

In August 2005, Ginn filed in the Court of Common Pleas a pro se "Motion to Vacate Void Judgment for Want of Subject Matter Jurisdiction." Opp'n Ex. 1 at 2. The PCRA court determined that this motion was a petition for collateral review of conviction under the Pennsylvania Post-Conviction Relief Act (PCRA), and the motion was denied as untimely in 2007. Opp'n at 3; *see also* Opp'n Ex. 1 at 2. Ginn filed a second PCRA petition in 2013, which the court also denied as untimely; the Superior Court affirmed the denial in October 2014. Opp'n at 3.

B. *Federal Court History*

On August 3, 1994, after Ginn had filed his Rule 1100 motion in the Philadelphia Court of Common Pleas but before Judge Temin had ruled on that motion, he filed a petition for a writ of habeas corpus in federal court in the Eastern District of Pennsylvania. Judge Bechtle dismissed the petition without prejudice, instructing Ginn to exhaust state remedies. Memo. at 9. Now, nearly 21 years later, Ginn has filed the instant motion under the rubric of Rule 60(d)(3), which provides that a district court has power to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). Ginn asserts that the "circumstances presented by this motion provide three separate layers of support for finding a fraud upon this Court." Memo. at 4. The allegations supporting his request for relief are that: (1) Judge Temin improperly denied him bail in violation of the state rules of criminal procedure; (2) Judge Temin should have recused herself because of her personal relationship with Mr. Medway; (3) Judge Temin should not have made the decision to recuse herself in his absence and in the absence of his appointed counsel; and (4) Judge Temin improperly "intercepted" his motion for habeas corpus that he had directed to the Pennsylvania Supreme Court. *See* Memo. at 4-5. In response, the Commonwealth argued that the Petitioner's claims are "garden-variety allegations of trial error, which, if raised in an actual habeas petition, would be untimely by about 16 years," and thus they do not rise to a level sufficient to justify a finding of fraud on the court. Opp'n at 5.

## II. DISCUSSION

All federal courts have the inherent equitable power to vacate a judgment that has been obtained through the commission of fraud on the court. *Universal Oil Prods. Co. v. Root Ref. Co.*, 328 U.S. 575, 580 (1946). This equitable power does not, however, extend to criminal convictions either in federal or in state court. *See Wells v. King*, 340 F. App'x 57, 58 (3d Cir. 2009) (per curiam) (panel of the Third Circuit was "unaware of any power that a federal court

5

has to overturn a state criminal conviction obtained by fraud, outside of power authorized by statute; *i.e.* through a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254" (citing *United States v. Washington*, 549 F.3d 905, 917 (3d Cir. 2008) (finding that there was "an absence of authority suggesting a longstanding inherent power of a district court to vacate a criminal sentence based on fraud"))); *see also United States v. Lebron*, 598 F. App'x 817, 818 (3d Cir. 2015) (per curiam) ("District courts do not have the inherent authority to vacate judgments procured by fraud in criminal cases and may instead vacate such judgments only pursuant to the authority granted by rule or statute."); *United States v. Brown*, No. 99-0730, 2013 WL 3742444, at *7 (E.D. Pa. July 17, 2013) ("While an 'inherent power' in equity to set aside civil judgments has long been recognized, the propriety of such an act in the criminal context is questionable." (citation omitted)); *Brewington v. Klopotoski*, No. 09-3133, 2012 WL 3764929, at *2 (E.D. Pa. Aug. 30, 2012) ("A federal court *does not* have the power to vacate its own or a state's prior criminal judgment obtained by fraud, outside of the power authorized by statute, *i.e.*, through a writ of habeas corpus."). Thus, this Court has no authority to grant Ginn's motion.

As stated above, the only avenue through which this Court could have had authority to potentially overturn Ginn's state judgment of conviction would have been via a timely filed petition for a writ of habeas corpus under 28 U.S.C. § 2254. *See Wells*, 340 F. App'x at 58. Ginn, however, has not filed a habeas petition since his initial petition filed in this District was denied in 1994 for failure to exhaust, and he is well beyond the one-year statute of limitations period provided in 28 U.S.C. § 2244(d) during which he could have timely done so. Accordingly, his motion shall be denied.

An Order consistent with this memorandum follows.

Dated: **June 24, 2015**

**BY THE COURT:**

**/s/ Wendy Beetlestone**

_____
**WENDY BEETLESTONE, J.**